NAUGATUCK NAV. CO. v. The RHODE ISLAND. See Cases Nos. 11.740a, 11,743, and 11,745.

---

## Case No. 10,056.

NAUGATUCK NAV. CO. v. The RHODE ISLAND.

[See Case No. 11,745.]

---

NAUGATUCK TRANSP. CO. v. The RHODE ISLAND. See Cases Nos. 11,-740a, 11,743, and 11,745.

NAUMKEAG STEAM COTTON CO. (The EDWIN v.). See Case No. 4,301.

---

## Case No. 10,057.

### NAUNTON v. The OREGON.

[1 Pac. Law Mag. 242.]

District Court, D. California. March 22, 1867

COLLISION—STEAM AND SAIL—LIGHTS.

On the night of May 21st, 1866, about twenty miles from Carmen Island, the Oregon ran into and sunk the bark Kent, which was becalmed. Hence this libel. The steamer had all lights set required by the act of congress. The bark did not have her red and green lights set, as required by the act of parliament, which is identical with the act of congress. The bark was not discovered until the steamer was close upon her. The bark had a bright white light in her main rigging. Weather clear and sea calm. The captain saw the steamer some two miles off, but had no thought of a collision.

Held, that although the bark was in fault in not displaying the proper lights, still, under the circumstances, would the steamer have seen the bark if she had had the colored lights up? To apply the strict rule would be harsh. I hold, and shall, till otherwise instructed, that under the circumstances of a ship becalmed in a remote sea and in such weather, the damage to both ships must be divided.

Ordered, that the damage to both vessels be found and the libellants recover one-half that amount with costs.

---

## Case No. 10,058.

### The NAUTILUS.

[1 Ware, 529.] 1

District Court, D. Maine. March 22, 1854.

COLLISION—BOTH IN FAULT—DAMAGES BY MOIETIES—DIFFERENCE OF VALUE OF VESSELS—INSCRUTABLE FAULT—FORTUITOUS COLLISION.

1. In cases of collision, occasioned by faults on both sides, the damages are divided between the two vessels by moieties without regard to the difference of their value.

2. The same rule, it seems, prevails when the collision is occasioned by faults, but they are inscrutable, and it cannot be determined whether they are imputable to one party or the other.
[Cited in The Comet, Case No. 3,050; The J. W. Everman, Id. 7,591.]
[See Bayard v. The Coal Valley, Case No. 1,-128.]

3. Where the collision is purely fortuitous, by the law of this country each vessel bears its own loss, but by the maritime law of most European states it is divided between them by moieties.
[4. Cited in The Mary Patten, Case No. 9,223, and in Vanderbilt v. Reynolds, Id. 16,839, to the point that when collision is by fault of both parties, costs will be refused to both.]

This was a libel in a cause of damage by collision. The Nautilus, a steamboat of about one hundred and forty tons burden used as a tow-boat on the waters of the Penobscot, started from Bangor, November 8, 1853, with two vessels in tow, down the river. Leaving one at Frankfort, she proceeded with the other, and arrived at Bucksport Narrows between nine and ten o'clock in the evening. On rounding Fort Point, at the entrance of the Narrows, she saw a steamer coming up the river below Ralph's Point, another projection on the opposite side of the river. It proved to be the Malden, another tow-boat, which, having carried down her tow, was on her return. The Nautilus was descending with the ebb tide at the rate of about eight miles an hour, and the Malden ascending at the rate of four or five, the tide making about three miles difference in the progress of the vessels. There had been in the beginning of the evening a squall of snow, but that was past, and though the sky was overcast, yet the moon being at her second quarter, there was sufficient light for the men on board each boat to see the other at the distance of half a mile or more. The Malden, of about one hundred and five tons burden, had a crew of six hands. As they were ascending, and at the time of the collision, the mate was at the helm, the engineer in the engine-house, and the captain in the cook-house. She had no signal lights to be seen, except lights at two small windows looking forward from the engine room, and these could scarcely answer the purpose of signal lights. The Nautilus had a crew of seven men. From the time she rounded Fort Point and entered the Narrows, the master was at the wheel, the engineer in the engine-house, and Stubbs, one of the hands, forward on the look-out. She bore two signal lights, one on the top of the engine-room, and one hanging on the braces of the smoke pipe. These were the most material facts.

Rowe & Hubbard, for libellants.
Fessenden & Deblois, for respondents.

WARE, District Judge. It seems hardly possible that two vessels approaching each other, both moved by steam and thus having

---

1 [Reported by Edward H. Daveis, Esq.]